**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JENNIFER QUINTILIANI, individually and on behalf of all others similarly situated,<br><br>             Plaintiff-Appellant,<br><br>  v.<br><br>CONCENTRIC HEALTHCARE SOLUTIONS, LLC and ALARYS HOME HEALTH, INC.,<br><br>             Defendants-Appellees. | No.   14-17312<br><br>D.C. No. 2:10-cv-01363-SMM<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted October 20, 2016
San Francisco, California

Before: BEA and IKUTA, Circuit Judges, and RESTANI,[**] Judge.

---

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

     [**]     The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Jennifer Quintiliani appeals the district court's order denying her motion for summary judgment and its determination that her claims failed as a matter of law because her position as a Staffing Coordinator with Concentric Healthcare Solutions, LLC[1] was exempt from overtime pay under the Fair Labor Standards Act ("FLSA")'s administrative exemption. We reverse and remand.

To meet the administrative exemption, an employee must meet the following criteria: (1) be "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week"; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200.

The district court held, as a matter of law, that Quintiliani exercised discretion and independent judgment on matters of significance in her primary duties. The district court based this holding on its findings that the Staffing

---

[1] During her employment with Concentric Healthcare Solutions, Quintiliani occasionally provided staffing coordinator services to Concentric Home Health (which later became Alarys Home Health, Inc.). Concentric Healthcare Solutions and Alarys (collectively referred to as "Concentric") shared ownership, management, human resource and payroll administration, and office space during the relevant time period.

Coordinator had the authority to discipline staff who did not comply with a client's policies or procedures, designate staff as Do Not Return ("DNR"), and "approve higher rates of pay where appropriate to ensure the placement of the most capable nurses with Concentric's clients." The district court relied on Andrew Jacobs's deposition and declaration in making these findings. In addition, the district court asserted that Quintiliani "[did] not dispute that the Staffing Coordinator has the authority to approve higher rates of pay for certain nurses."

The district court erred in holding that there was no genuine issue of material fact regarding Quintiliani's ability to discipline nurses. First, the district court ignored Quintiliani's testimony (cited in her statement of facts in support of her motion for partial summary judgment) that directly contradicts Jacobs's declaration and deposition. In her declaration, Quintiliani declared: "I did not discipline, review or recommend promotions for the nurses and healthcare workers I staffed. . . . If I was contacted with a complaint or problem I was instructed to contact Director of Medical Staffing Jacobs and inform [him] of the issue and seek his direction on how to proceed." Moreover, Quintiliani testified: "If a client was unhappy with a specific nurse or healthcare professional staffed with them, someone from the client facility, typically the Director of Nursing, would contact Director of Medical Staffing Jacobs and discuss the situation with him. . . . All

3

decisions related to DNRs were handled directly by Mr. Jacobs. My opinion regarding a DNR designation was never solicited by Mr. Jacobs." Quintiliani also testified: "It was the policy of Concentric to not officially fire any nurse or healthcare professional because of regulatory and paperwork issues. If a nurse needed to be 'fired' because of multiple DNRs, failing to show up at assignments, reports of performance issues by the client facility, etc., that nurse was effectively fired by Director of Medical Staffing Jacobs directing that they no longer be staffed. . . . All such decisions related to not staffing an individual were made directly by Mr. Jacobs. My opinion regarding a do not staff decision was never solicited by Mr. Jacobs." Second, Quintiliani also submitted testimony from Jessica Carpenter (who also worked as a Staffing Coordinator during part of her employment with Concentric) confirming that Quintiliani's description of the Staffing Coordinator's job responsibilities was accurate.

In addition, Quintiliani pointed to Jacobs's deposition, in which he testified that the Staffing Coordinator did not have the authority to discipline staff. Rather, the Staffing Coordinator's authority was limited to counseling staff by relaying complaints from the clients to staff.[2]

---

[2] There was no dispute that the Staffing Coordinator provides counseling to staff.

The district court also erred in holding there was no genuine issue of material fact regarding Quintiliani's authority to set pay rates.[3] The district court's assertion that Quintiliani "[did] not dispute that the Staffing Coordinator has the authority to approve higher rates of pay for certain nurses," glosses over a genuine dispute between the parties as to the level of discretion that Quintiliani had to approve higher rates of pay within Defendants' already established billing rates. In her reply in support of her motion for partial summary judgment, Quintiliani argues: "Defendants also allege Plaintiffs approved higher rates of pay for certain nurses. Not only have Defendants admitted elsewhere Plaintiffs could not negotiate on behalf of the company, Defendants also admitted in Jacobs' deposition that the Recruiters actually set rates of pay and that Staffing Coordinators only have latitude to offer higher pay rates within Defendants' already established bill rates." (citations omitted). Because the record does not indicate the extent of this "latitude to offer higher pay rates," there is a genuine

---

[3] Quintiliani also argues that the district court erred in holding there was no genuine issue of material fact as to whether Quintiliani had authority to recruit staff because she testified that she did not have such authority. However, her statements regarding her level of participation in recruitment are inconsistent in the record. These inconsistencies do not themselves create a genuine issue of material fact. *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543–44 (9th Cir. 1975).

issue of material fact that must be resolved to determine whether the discretion requirement is met.

Accordingly, triable issues of fact exist as to whether Quintiliani exercised discretion by disciplining and setting pay rates for staff. Judgment in favor of Concentric is reversed and this case is remanded for a trial on the third prong of the administrative exemption (29 C.F.R. § 541.200(a)(3)).

**REVERSED AND REMANDED.**